IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| ENCODITECH LLC, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | C.A. No. 18-864 (MN) |
| QARDIO, INC., | ) |  |
| Defendant. | ) |  |
| ENCODITECH LLC, | ) |  |
| Plaintiff, | ) |  |
| v. | ) | C.A. No. 18-2059 (MN) |
| BUSHNELL HOLDINGS, INC., | ) |  |
| Defendant. | ) |  |
| ENCODITECH LLC, | ) |  |
| Plaintiff, | ) |  |
| v. | ) | C.A. No. 19-151 (MN) |
| NEUROMETRIX, INC., | ) |  |
| Defendant. | ) |  |

**MEMORANDUM ORDER**

At Wilmington this 19th day of June 2019:

As announced at the hearing on June 14, 2019, IT IS HEREBY ORDERED that:

1. Qardio, Inc.'s ("Qardio") Motion to Dismiss for Failure to State a Claim (D.I. 17 in C.A. No. 18-864) is DENIED.

2. Bushnell Holdings, Inc.'s ("Bushnell") Motion to Dismiss for Failure to State a Claim (D.I. 8 in C.A. No. 18-2059) is DENIED.

3. NeuroMetrix, Inc.'s ("NeuroMetrix") Motion to Dismiss for Failure to State a Claim (D.I. 7 in C.A. No. 19-151) is DENIED.

Defendants moved to dismiss the operative complaints in each of their actions pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that the claims of U.S. Patent No. 6,321,095 ("the '095 Patent") are invalid as claiming ineligible subject matter under 35 U.S.C. § 101. In their motions, Defendants also seek dismissal of Plaintiff's allegations of direct and indirect infringement under Rule 12(b)(6) as insufficiently pled under *Iqbal* / *Twombly*. Defendants' motions were fully briefed as of May 22, 2019,[1] and the Court received further submissions in the *Qardio* case regarding which Supreme Court or Federal Circuit case each party contends is analogous to the claims at issue in Defendants' motions as related to the § 101 arguments. (*See* D.I. 29, 30 in C.A. No. 18-864; *see also* D.I. 27 in C.A. No. 18-864).[2] The Court carefully reviewed all submissions in connection with Defendants' motions, heard oral argument[3] and applied the following legal standard in reaching its decision:

---

[1] Qardio's motion was fully briefed as of December 7, 2018 (*see* D.I. 18, 23, 25 in C.A. No. 18-864), Bushnell's motion was fully briefed as of April 24, 2019 (*see* D.I. 9, 14, 15 in C.A. No. 18-2059), and NeuroMetrix's motion was fully briefed as of May 22, 2019 (*see* D.I. 8, 13, 15 in C.A. No. 19-151).

[2] Despite being filed after the *Qardio* case and involving allegations of infringement of the same '095 Patent, Plaintiff did not mark the *Bushnell Holdings* and *NeuroMatrix* cases as related to the *Qardio* case as required by Local Rule 3.1(b)(3). As a result, the *Bushnell Holdings* and *NeuroMetrix* cases were originally assigned to The Honorable Richard G. Andrews but were reassigned to the undersigned judge on June 12, 2019. (*See* D.I. 18 in C.A. No. 18-2059; D.I. 17 in C.A. No. 19-151). Because these cases were reassigned two days prior to the hearing, no further letter submissions were filed by the parties.

[3] (*See* D.I. 33 in C.A. 18-864; D.I. 21 in C.A. No. 18-2059; D.I. 20 in C.A. No. 19-151).

I.     **LEGAL STANDARDS**

   A.     Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

   B.     Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347, 2354 (2014). These "are 'the basic tools of scientific and

technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 134 S. Ct. at 2354. A claim to any one of these three categories is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 134 S. Ct. at 2355. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

        1.      Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed

advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). In performing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature. *Alice*, 134 S. Ct. at 2354; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

2. Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 134 S. Ct. at 2355; *see also McRO*, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions

applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

      C.      <u>Pleading Direct Infringement</u>

Liability for direct infringement arises under 35 U.S.C. § 271(a) when a party, without authorization, "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." The activities set forth in § 271(a) do not result in direct infringement unless the accused product embodies the complete patented invention. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 & n.2 (Fed. Cir. 2000). Therefore, to state a claim of direct infringement sufficient to withstand a motion to dismiss, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim(s). *See TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018).

The Federal Circuit recently provided guidance on pleading direct infringement under *Iqbal / Twombly*. *See generally Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018). In *Disc Disease*, the Federal Circuit reversed the district court's dismissal of plaintiff's direct infringement claims, finding that the plaintiff's allegations were sufficient under the plausibility standard of *Iqbal* and *Twombly* because the complaint specifically identified the three accused products and alleged that the accused products met "each and every element of at least one claim" of the asserted patents, either literally or equivalently. *Disc Disease*, 888 F.3d at 1260. Following *Disc Disease*, another court in this District similarly found that a plaintiff plausibly pleaded an infringement claim where the complaint specifically identified the infringing product

and alleged "that it practices each limitation of at least one claim in" the relevant patents. *Promos Tech., Inc. v. Samsung Elec. Co.*, No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018); *see also AgroFresh Inc. v. Hazel Techs., Inc.*, No. 18-1486-MN, 2019 WL 1859296, at *2 (D. Del. Apr. 25, 2019) (applying *Disc Disease* to find allegations of direct infringement sufficiently pled); *DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-98-MN, 2018 WL 6629709, at *2 (D. Del. Dec. 19, 2018) (same).[4]

## II. THE COURT'S RULING

The ruling to deny Defendants' motions to dismiss[5] under Federal Rule of Civil Procedure 12(b)(6) was announced from the bench at the conclusion of the hearing as follows:

> . . . I'm prepared to rule on the pending motions. I will not be issuing written opinions, but I will issue an order that states my ruling.
>
> I want to emphasize before I get into the rulings that while I'm not issuing a written opinion, we have followed a full process for making the decisions that I'm about to state.
>
> There was full briefing on each of the pending motions. There were additional submissions regarding what each party viewed as the most analogous case and there has been extensive oral argument here today. All of the submissions and the arguments have been carefully considered.
>
> Now, as to my rulings, as an initial matter, I am not going to read into the record my understanding of Section 101 law. I have a legal standard that I've included in earlier opinions, including somewhat recently in *Kroy IP Holdings v. Groupon*, Civil Action No. 17-1405. I incorporate that law and adopt it to my ruling today, and I will also set it out in the order that I now will issue.
>
>             \*      \*      \*
>
> Finally, the three Encoditech cases; the *Qardio* case, Civil Action Number 18-864; the *Bushnell Holdings* case, Civil Action

---

[4] The legal standard for direct infringement set forth in this Memorandum Order is derived from the Court's opinions in *DoDots* and *AgroFresh*.

[5] (D.I. 17 in C.A. No. 18-864; D.I. 8 in C.A. No. 18-2059; and D.I. 7 in C.A. No. 19-151).

Number 18-2059; and the *NeuroMetrix* case, Civil Action Number 19-151.

There is one patent at issue, United States Patent Number 6,321,095, which generally relates to wireless communication between mobile stations using encryption keys.

The defendant in each of the cases has moved pursuant to Rule 12(b)(6) to dismiss for failure to state a claim based on Section 101 and also for failure to state a claim of direct and indirect infringement. The bases for the 101 motions in each of the cases are virtually identical.

First, as to the motions under section 101, after reviewing the entire record, hearing argument, and applying the law as I understand it, I cannot conclude at this stage that the claims are directed to patent ineligible subject matter.

Thus, I will deny the defendant[s'] motions to dismiss on the basis of 101 in each of the three cases.

Defendants treat claim 7 as representative, and Encoditech does not seriously challenge that, so I will also treat the claim, that claim as representative.

As to step one of *Alice*, defendants assert that claim 7 is directed to the abstract idea of sending and receiving information to establish a secure line of communication. Encoditech argues that claim 7 provides a specific engineering design and method that solves a particular problem in encrypting wireless messages.

I disagree with defendants as to step -- I'm sorry. I disagree with plaintiff as to step one. The claim does not claim an improved design or device, solution to a problem or method for securely communicating wirelessly, but rather generic technology using functional limitations. And the functional limitations here I find are similar to those that were in cases such as *Two-Way Media v. Comcast*, [874 F.3d] 1329 from the Federal Circuit in 2017.

The functional limitations in both cases claim a function generally and not a particular way of performing that function. When considered as a whole, claim seven is directed to the abstract idea of establishing a secure wireless communication link and sending and receiving encrypted messages.

At step two, however, accepting the allegations as true, and viewing them in the light most favorable to the plaintiff with every doubt resolved in plaintiff's favor, but disregarding conclusory statements, I find that there are issues of fact that preclude dismissal.

Defendants argue that claim 7 only uses known processes and generic hardware to send and receive data to establish secure communication. They argue that public key encryption is ubiquitous. Encoditech points to the novel use of common key encryption to require wireless communication as supplying the requisite inventive concept and argues that at the very least, the use of a common encryption key is a fact that precludes dismissal under *Berkheimer*.

I note that Encoditech also argued that claim construction is necessary for the term common encryption key and C key and perhaps others, but offers nothing on how this will change the analysis other than to say it goes to the conventionality of public encryption. While not dispositive in this case, the Court agrees with those cases that require parties making such arguments to provide the pertinent analysis before they can prevail. However, here, in addition to that argument, in the Amended Complaint against Qardio and the others, plaintiffs alleged, and I'm looking at paragraph 12 to 15 of each of those amended complaints, or at least the Amended Complaint and the other complaints, plaintiff alleges that aspects of the claim such as the use of RF band portions and subportions were not well-known or established. In reviewing the allegations and the patents, I find that it is unclear whether using RF band portions and subportions and common encryption keys in the manner recited in claim 7 was conventional, well-known and understood in the art. The specification does not admit that these encryption techniques, particularly in the recited claim language and claims processes were well-known, and thus there seems to be an issue of fact that precludes dismissal under Section 101.

As to the cases that Qardio cites as being most analogous, that's the *Two-Way Media* case I mentioned earlier, in *Two-Way Media*, the claims were directed to methods for transmitting data streams over communication networks and maintaining databases and records of the information sent. There, the Federal Circuit found claims were directed to an abstract idea because they were simply methods of routing information recited in functional terms without any indication how to accomplish the desired result, and further, that there was no inventive concept recited in the claim, although there was a purportedly innovative scalable architecture described in the specification, but that there was just conventional computer and

network components recited in the claim and ordered in a conventional way.

I agree that the claims in *Two-Way Media* are similar as step one because claim 7 uses functional limitations to claim a way of wirelessly communicating securely without any real recitation of how to do so, but I disagree that the claims are similar in step two. There, the claims depart because there are questions here as to whether the use of RF band portions and the C key as recited in the claims were conventional and well-known.

As to defendants' motion to dismiss the allegations of direct and indirect infringement for failure to state a claim, I will deny those as well. As I did with Section 101, I am not going to read into the record my understanding of the law on this issue. I have a legal standard section that I've included in earlier opinions, including somewhat recently in *DoDots*, Civil Action No. 18-98. I incorporate that law, adopt it into my ruling today and will also set it out in the order that I issue.

In the papers, Qardio moves to dismiss allegations of direct and indirect infringement because Encoditech did not allege that the accused system contained all the limitations in claim 7, and which is singled out in the first Amended Complaint, and particularly that it was missing the elements providing the encrypted message to the second mobile station.

Today it appears that all defendants argued that Encoditech did not meet the pleading standard with respect to the limitation, messages exchanged between the first and second mobile station are encrypted using the C key, because Encoditech alleged simply, for example, defendants allow[] for data to be shared between devices.

With respect to the assertions here, however, under *Disc Disease*, the stated claim of direct infringement, Encoditech only needed to identify and include product by name, allege that defendants make, sell, offer to sell, sell, import or use in the United States that accused product, and to allege that the accused product satisfies each and every limitation of at least one claim. And Encoditech alleges here in each of the cases that the defendant[] has performed all of the steps of claim 7 by its internal testing of the accused system. And there I'm looking at the Amended Complaint in *Qardio*, paragraph 17 and in the complaint in the *NeuroMetrix* and *Bushnell* cases, also paragraph 17. The Court agrees with defendants, that plaintiff's pleadings are sloppy, or at the very least, not a model of clarity. In some instances, such as with Qardio, the

pleadings appear to omit important information and specific claim limitations, and they also fail to attach the patent[] and the certificate of correction.

The Court finds, however, that Encoditech has nevertheless met the relatively low threshold for stating a claim of direct infringement set forth by the Federal Circuit in *Disc Disease*, and because the only basis for seeking dismissal of the indirect infringement claims was failure to adequately plead direct infringement, I will deny that motion as well.

_____<br>
The Honorable Maryellen Noreika<br>
United States District Judge